[Cite as *Mitchell v. Mitchell*, 2014-Ohio-1745.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Ralph I. Mitchell, | : | |
| Plaintiff-Appellant, | : | |
| v. | : | No. 13AP-656 |
| | | (C.P.C. No. 78DR-01-03) |
| Alice J. Mitchell, | : | |
| | | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on April 24, 2014

*Wolinetz Law Offices,* and *Barry H. Wolinetz,* for appellant.

*Gerrity and Burrier, Ltd.,* and *Timothy D. Gerrity,* for appellee.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

TYACK, J.

{¶ 1} This is an appeal from a decision and entry by the Franklin County Court of Common Pleas, Division of Domestic Relations, overruling objections to a magistrate's decision and denying the motion of plaintiff-appellant, Ralph I. Mitchell, Ph.D. ("Dr. Mitchell"), for termination of spousal support. For the reasons that follow, we affirm the judgment of the trial court.

*Factual and Procedural Background*

{¶ 2}   Dr. Mitchell and defendant-appellee, Alice J. Mitchell ("Ms. Mitchell"), were married on September 8, 1945 and were divorced on June 19, 1978.  Dr. Mitchell worked at Battelle Memorial Institute ("BMI") as an inhalation toxicologist.  In addition, the Mitchells owned a farm in Delaware County.  At the time of the divorce, Dr. Mitchell bought out Ms. Mitchell's interest in the property.  Ms. Mitchell purchased an annuity with her proceeds.

{¶ 3}   The decree ordered Dr. Mitchell to pay $800 per month in indefinite spousal support to Ms. Mitchell.  The trial court retained jurisdiction to modify the spousal support order upon a showing of a substantial change in circumstances.

{¶ 4}   Dr. Mitchell retired from BMI in 1989.  He receives a pension that currently pays approximately $1,800 per month.  The Mitchells were divorced at a time when pensions were not subject to division.  At the time of his retirement, Dr. Mitchell sought a reduction in his spousal support payment, and the obligation was reduced to $500 per month, effective November 1, 1989.

{¶ 5}   In 1990, Dr. Mitchell married Hedwig Goldsmith ("Ms. Goldsmith").  Ms. Goldsmith lives in Manchester, England, and she and Dr. Mitchell have a long-distance relationship with some overlap of their finances.

{¶ 6}   In 2007, Dr. Mitchell sought to terminate spousal support.  His request was denied on August 31, 2009.

{¶ 7}   On July 26, 2011, Dr. Mitchell again sought to terminate spousal support contending a substantial change in circumstances had taken place since 2007.  He indicated that his poor health had caused an increase in his expenses, and his income had decreased.

{¶ 8}   Dr. Mitchell is 87 years old.  He owns 52 acres consisting of the former marital home and the farm.  The property is mortgage free.  He uses a contract farmer to work the land, but he claims he receives no income from the farm because of the flooding of his property and an ongoing dispute with M/I Homes.  He claimed a loss of $10,570 on his 2010 tax return.  His property was valued at $1,078,400 by the Delaware County Auditor in 2011.  He maintains a checking/savings account of approximately $20,000.  On cross-examination he admitted that he had a number of BMI Credit Union Accounts totaling more than $100,000.  Some accounts were in his name, others were held jointly

with Ms. Goldsmith, although Dr. Mitchell testified that they keep their financial affairs separate. He did admit that Ms. Goldsmith paid for some of his international travel-related expenses to Europe, South America, and Latin America.

{¶ 9} Dr. Mitchell testified that he receives $1,677 per month from his pension at BMI. In 2009 and 2010, his tax returns showed a gross annual pension income of $21,561 or $1,796.75 per month. He testified that he receives $1,110 per month from Social Security net from Medicare. His tax returns showed his annual non-taxable Social Security benefits were $15,653 or $1,304.42 per month, and his Form SSA1099 reflected payment of $14,496 per year net of Medicare deduction or $1,208 per month.

{¶ 10} Ms. Mitchell is in good health at age 92. The only medications she takes are for high blood pressure. She lives alone in an apartment at the Northland Senior Village where she has resided for the last 23 years. She buys her clothes at a thrift store, and relies upon her adult children for transportation. She receives spousal support of $500 per month and $739 per month from Social Security net of Medicare costs. Her sole investment is an annuity with Pacific Life. The annuity is currently worth $88,491.27. She currently withdraws $439 per month from that annuity to meet her monthly budget of $1,523.28. She testified that she had incurred $3,000 in attorney fees defending Dr. Mitchell's motion, but that amount did not include trial preparation and hearing time.

{¶ 11} A magistrate found that the trial court retained jurisdiction to modify the award in accord with R.C. 3105.18(E). After a full hearing, the magistrate found insufficient information to demonstrate a substantial change of circumstances to warrant termination or any reduction in Dr. Mitchell's spousal support obligation.

{¶ 12} Dr. Mitchell filed objections to the magistrate's decision. The trial court overruled the objections on July 1, 2013. This appeal followed with Dr. Mitchell assigning the following as error:

> I. The trial court erred and abused its discretion when it found that there was not a substantial change of circumstances.
>
> II. The trial court erred as a matter of law when it failed to conduct an analysis of the factors contained in R.C. 3105.18(C).

III. The trial court erred and abused its discretion when it awarded $4,000 in attorney's fees to appellee.

### *Standard of Review*

{¶ 13} We review the modification of spousal support under an abuse of discretion standard. *Piliero v. Piliero,* 10th Dist. No. 10AP-1142, 2012-Ohio-1153, ¶ 29.

### *Legal Analysis*
### *Substantial Change of Circumstances*

{¶ 14} In his first assignment of error, Dr. Mitchell argues that his health has deteriorated substantially since 2009 when he last sought to terminate his spousal support. He also argues that his medical expenses have increased dramatically. He maintains that his income has gone down because he is no longer able to fully operate his farm which was flooded in 2011 by M/I Homes. He is currently in litigation with M/I Homes regarding the damages to his farm.

{¶ 15} The trial court found that Dr. Mitchell suffers from various conditions such as a collapsed lung, atrial fibrillation, significant arthritis, numbness in his hands, various tumors, macular degeneration and an enlarged prostate. Dr. Mitchell testified that he takes 14 different medications. But a review of the record shows that in 2009 he had many of the same conditions: two teeth implants; loss of use of his hands; a spinal cord injury; cataracts; back pain; hypertension; foot pain; macular degeneration and prostate problems. At that time, he took 11 different medications. The trial court found that there had not been a sufficient deterioration in Dr. Mitchell's health conditions to warrant finding of a change of circumstances.

{¶ 16} Additionally, the trial court did not find much of Dr. Mitchell's evidence regarding his medical expenses to be credible. He introduced medical bills and testimony that his additional medical expenses were $24,341. On cross-examination, it was revealed that his insurance payments and write-offs reduced his out-of-pocket expenses to $1,066.07. Again, the trial court did not find the lesser amount to rise to the level of a change of circumstances necessary to trigger termination or modification of spousal support.

{¶ 17} In 2009, the court recognized the seriousness of Dr. Mitchell's health problems. Nevertheless, the court held that the modification in 1989 took into consideration the health of the parties, and that it would have been contemplated at that time that the parties would continue to age.

{¶ 18} The trial court found that Dr. Mitchell inflated his monthly budget by including one time expenses as monthly expenses, and that accounted for the alleged deficit in his monthly budget. The trial court indicated that Dr. Mitchell was essentially in the same position as he was in 2009 when there was not a substantial change in circumstances from the prior spousal support order.

{¶ 19} As the trial court noted in 2009: "The Plaintiff is essentially requesting the Court to force the Defendant to use the annuity to meet her expenses to relieve him of his spousal support obligation while he claims a hardship as he sits upon a valuable piece of real estate." (Decision and Judgment Entry to Plaintiff's Objection to the Decision of the Magistrate, August 31, 2009, 6-7.) These circumstances have not changed significantly in the interim.

{¶ 20} Our review of the record convinces us that the trial court was within its discretion in failing to find a substantial change in circumstances. The first assignment of error is overruled.

### Factors contained in R.C. 3105.18

{¶ 21} In his second assignment of error, Dr. Mitchell contends that the trial court erred in failing to conduct an analysis as set forth in R.C. 3105.18(C). R.C. 3105.18(C)(1) provides that when determining whether spousal support is appropriate and reasonable, the trial court shall consider a list of 14 factors.

{¶ 22} Pursuant to the Supreme Court Ohio's decision in *Mandelbaum v. Mandelbaum,* 121 Ohio St.3d 433, 2009-Ohio-1222, paragraphs one and two of the syllabus, the trial court may not modify a prior order of spousal support unless the court finds that a substantial change in circumstances has occurred and that the change was not contemplated at the time of the original decree.

{¶ 23} Here, the trial court made a determination that a substantial change in circumstances had *not* occurred, and therefore there was no need to go further in its analysis. In *Faulkner v. Faulkner*, 10th Dist. No. 00AP-473 (Nov. 21, 2000), this court

held that, in granting or denying a motion to modify spousal support, there is no express requirement that the trial court re-examine all of the factors listed in R.C. 3105.18(C)(1). The second assignment of error is overruled.

### *Attorney Fees*

{¶ 24} The trial court awarded Ms. Mitchell $4,000 in attorney fees. Ms. Mitchell testified before the magistrate that she had spent approximately $3,000 in opposing Dr. Mitchell's most recent motion to terminate spousal support.

{¶ 25} An award of attorney fees in a domestic relations action is committed to the sound discretion of the trial court. *Flowers v. Flowers*, 10th Dist. No. 10AP-1176, 2011-Ohio-5972, ¶ 21. "This court will not reverse an award of attorney fees absent a finding that the trial court abused its discretion." *Id.*

{¶ 26} Here, the trial court awarded attorney fees pursuant to R.C. 3105.73(B) which provides:

> In any post-decree motion or proceeding that arises out of an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that motion or proceeding, the court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets.

The trial court stated, "the record is clear that an award of fees was appropriate given the income and budgets of the parties and that equity would allow such an award viewing the evidence as a whole." (Decision and Entry, July 1, 2013, at 8.) The trial court also cited to *Babka v. Babka*, 83 Ohio App.3d 428, 435 (9th Dist.1992), which held that "[w]hen the amount of time and work spent on the case by the attorney is evident, an award of attorney fees, even in the absence of specific evidence, is not an abuse of discretion."

{¶ 27} In *Conley v. Conley*, 10th Dist. No. 89AP-826 (Apr. 26, 1990), this court indicated that in order to support an award of attorney fees in a domestic relations action, there must be some evidence contained in the record to support the reasonableness of the fee. Yet, as this court has stated, "[t]he trial court is able to evaluate, in a large measure,

the work performed by an attorney in a domestic relations case by merely looking at the record before the court." *Ward v. Ward*, 10th Dist. No. 85AP-61 (June 18, 1985). A trial court may use its own knowledge and experience to determine the reasonableness of the amount claimed. *Id.*

{¶ 28} Here, the magistrate took Ms. Mitchell's testimony that she had expended $3,000 thus far in the litigation, and that Dr. Mitchell had expended approximately $19,000 in bringing the action. It was within the trial court's discretion to award an additional amount of $1,000 in fees for in-court time and the amount of time expended in preparing for trial, and the additional time and preparation for the hearing before the trial court arguing the objections to the magistrate's decision.

{¶ 29} The third assignment of error is overruled.

{¶ 30} Based on the foregoing, Dr. Mitchell's three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is affirmed.

*Judgment affirmed.*

SADLER, P.J., and CONNOR, J., concur.